UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JESSE K. ARMSTRONG, III,

    Plaintiff,

v.                                                      Case No.:   3:23-cv-80-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

# OPINION AND ORDER

Plaintiff Jesse K. Armstrong III seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. (Doc. 17). As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

On August 25, 2021, Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income, alleging disability beginning on August 1, 2020. (Tr. 57, 178-211). Plaintiff later amended that alleged disability onset date to August 29, 2021. (Tr. 15, 36). The applications were denied initially and on reconsideration. (Tr. 57, 58, 76, 77). Plaintiff requested a hearing and on August 31, 2022, a hearing was held before Administrative Law Judge Kelley Fitzgerald ("ALJ"). (Tr. 31-48). On September 8, 2022, the ALJ entered a decision finding Plaintiff not under a disability from August 29, 2021, through the date of the decision. (Tr. 15-26).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 23, 2022. (Tr. 1-5). Plaintiff initiated this action by Complaint (Doc. 1) filed on January 23, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 11).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 29, 2021, the alleged onset date. (Tr. 18). At step two,

the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis of the hips, degenerative disc disease ("DDD") of the lumbar spine, schizophrenia disorder, adjustment disorder, and anxiety disorder." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he with [sic] lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; sitting about six hours in an eight[-]hour workday; standing and walking a total of six hours in an eight[-]hour workday; no more than occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; no climbing of ladders, ropes and scaffolds; no concentrated exposure to dangerous machinery and unprotected heights; work that does not require understanding, remembering and carrying out more than simple instructions in a routine work setting with no more than occasional changes; and no more than occasional interaction with co-workers.

(Tr. 20).

Plaintiff worked as a forklift operator, laborer, merchandiser. (Tr. 25). The ALJ made no finding about the capacity for past relevant work and further found that this information was not material. (Tr. 25). At step five, the ALJ found that

considering Plaintiff's age (39 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   price marker, DOT[1] 209.587-034, light, SVP 2

    (2)   laundry worker, DOT 302.685-010, light, SVP 2

    (3)   assembler, small products, DOT 706.684-022, light, SVP 2

(Tr. 26). The ALJ concluded that Plaintiff was not under a disability from August 29, 2021, through the date of the decision. (Tr. 26).

## II.    Analysis

On appeal, Plaintiff raises the following issue: "in violation of Social Security Ruling 96-8p and applicable regulations governing the evaluation of medical opinions, the Commissioner's physical residual functional capacity is unsupported by medical evidence of record and erroneously rejects the only opinion of record that is based on a complete record." (Doc. 13, p. 9). In short, Plaintiff argues that the ALJ improperly considered the opinions of medical providers and, as a result, the RFC is unsupported by medical evidence.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

Starting with the ALJ's consideration of medical opinions, the regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Plaintiff focuses on the ALJ's consideration of the opinions of consultative examiner Donald Auerbach, D. O. and treating pain specialist Reynaldo Pardo, M.D. (Doc. 13, p. 9-10). The Court begins with Dr. Pardo's opinions.

### A.     Reynaldo Pardo, M.D.'s Opinions

Plaintiff argues that the ALJ did not properly assess pain management special Dr. Pardo's opinions. (Doc. 13, p. 15-20). Dr. Pardo treated Plaintiff from at least July 1, 2021 through July 29, 2022. (Tr. 464-493). In July 2021, Plaintiff initially complained of low back pain, right hip pain, and right leg pain to the level of 8/10. (Tr. 492). Dr. Pardo found Plaintiff exhibited pain behaviors, with tenderness in the lumbar spine, pain on extension, positive Fortin finger sign, positive straight leg test, and positive Scour test of the right hip. (Tr. 492-93). Dr. Pardo reviewed a right hip MRI scan from 2015, which showed mild hypertrophic and subchondral cystic changes about the femoral heads. (Tr. 493). He also reviewed an MRI scan of the lumbar spine from 2011, which showed L2-3 through L4-5 facet joint hypertrophy resulting in spinal stenosis, and L5-S1 disc desiccation, central and right paracentral herniated disc protrusion with annular tear, indenting the thecal sac and touching the right S1 nerve root, as well as facet arthropathy and bilateral bony foraminal stenosis. (Tr. 493). He recommended a right hip joint corticosteroid and local anesthetic injection and also recommended obtaining new MRI scans of the lumbar spine and

right hip. (Tr. 493). At that time, Plaintiff was taking Doxepin, Gabapentin, MS Contin, and oxycodone HCI for breakthrough pain. (Tr. 492).

Throughout Dr. Pardo's treatment, Plaintiff continued having similar complaints of right hip pain, and in August 2021, Plaintiff received a hip joint corticosteroid and local anesthetic injection. (Tr. 488). Plaintiff continued to have the same pain issues with low back pain and lumbar radiculopathy in the right leg with symptoms of numbness and tingling and subjective weakness. (Tr. 468). In May 2022, Plaintiff received a lumbar epidural steroid injection at L3-4. (Tr. 470). In June 2022, Plaintiff reported he received moderate relief of his right lower extremity radiculopathy for a two-week period, but also reported a gradual recurrence of the symptoms with an intensity of 7 to 8/10, aggravated by prolonged standing, prolonged ambulation, bending, and lifting. (Tr. 466) Plaintiff also complained of right hip pain, especially when going from a sitting to standing position. (Tr. 466).

In July 2022, Dr. Pardo reviewed an updated MRI scan of the lumbar spine, which showed lumbar dextroscoliosis and also showed: at L3-4. a tear of the posterior annulus; at L4-5, degenerative disc disease, moderate left-sided lateral recess stenosis; at L5-S1 degenerative disc disease, disc desiccation, Modic type I degenerative endplate change, tear of the posterior annulus, severe left-sided intervertebral neural foraminal stenosis, and impingement in the left L5 nerve root. (Tr. 465).

The MRI of the right hip showed osteoarthritic changes with osteophyte formation right femoral head, subchondral cysts in the acetabulum, and loss of articular cartilage in the acetabulum. (Tr. 465). It further showed a healed fracture of the inferior pubic ramus with fracture deformity, severe degenerative disc disease L5-S1, and osteopathic changes of the left hip joint. (Tr. 465).

At a July 2022 appointment with Dr. Pardo, Plaintiff continued to complain of low back pain across the lumbosacral area, persistent right hip pain, severe morning pain, and stiffness. (Tr. 464). From the injections, Plaintiff reported moderate and transient relief of the radicular pain and reduced numbness and tingling for 3-4 weeks, but the pain recurred with the same baseline intensity of 8/10. (Tr. 464).

On July 11, 2022, Dr. Pardo completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) and a Pain Questionnaire. (Tr. 452-457). In the Medical Source Statement, Dr. Pardo found Plaintiff: could occasionally lift 10 pounds and frequently lift less than 10 pounds; needed a walking cane or walker for ambulation; could stand or walk 2 hours in an 8-hour day; could sit 3 hours in and 8-hour day; needed unscheduled breaks every 20 to 30 minutes, for about 10 minutes; would have good and bad days; would be absent from work more than 4 day per month; could never climb, balance, kneel, crouch, crawl; and could occasionally stoop. (Tr. 454).

To support these findings, Dr. Pardo cited severe degenerative changes of the lumbar spine, severe spinal and foraminal stenosis, impingement of L5 nerve root at L5-S1, multi-level annular disc tear, right hip joint arthritis (osteoarthritic changes) from previous right pubic ramus fracture, facture deformity, lumbar scoliosis, and sacroiliitis. (Tr. 454). He found Plaintiff limited to occasional reaching in all directions, handling, fingering, and feeling. (Tr. 454). He supported these limitations by commenting that Plaintiff was unable to sit or stand long enough to perform manipulative work, had pain and maladaptive positioning, and used opioids analgesics, which affected Plaintiff's performance. (Tr. 454). Dr. Pardo also included environmental limitations. (Tr. 455). He supported these limitations based on Plaintiff's severe osteoarthritis, lumbar inflammatory disease, scoliosis, and use of opioid analgesics, which could easily trigger nausea or vomiting in an environment with dust, fumes, odors, chemicals, and so on. (Tr. 455).

On that same date, Dr. Pardo completed a Pain Questionnaire. (Tr. 456-57). He found Plaintiff suffered from severe pain in the lower back, right hip, right lower extremity, and intermittent pain in the left lower back and leg. (Tr. 456). Dr. Pardo found Plaintiff's pain was caused by his severe lumbar degenerative disc disease, spinal/foraminal stenosis, nerve root impingement, right hip osteoarthritis, lumbar scoliosis, and sacroiliitis. (Tr. 456). He cited an MRI scan and physical examination to support the existence of the underlying physical impairments. (Tr. 456). Dr. Pardo

also found that standing, ambulation, prolonged sitting, supine positions, bending, lifting, and long car rides aggravated Plaintiff's pain level. (Tr. 456). He further found Plaintiff needed the opportunity to shift from sitting, standing, or walking at will every 20-30 minutes. (Tr. 456). For pain relief, Dr. Pardo stated that Plaintiff would need to lie down every 20 to 30 minutes. (Tr. 457). He found Plaintiff's pain would frequently to constantly interfere with his attention and concentration. (Tr. 456). He reiterated that Plaintiff would be absent from work more than four days per month and that Plaintiff would be unable to complete full-time work due to his impairments. (Tr. 456).

    The ALJ found Dr. Pardo's opinions not persuasive. (Tr. 23).

> [T]hey are not well supported by objective medical evidence that could reasonably be expected to result in such significant limitations. Moreover, his opinions are inconsistent with the essentially normal clinical findings noted by other medical sources of record, Drs. Cao and Auerbach. While the claimant has stenosis and degenerative disc disease of the lumbar spine and osteoarthritis of the hips, none of his examination findings have included decreased strength. Furthermore, there is no evidence indicating that a handheld assistive device is necessary for ambulation. None of the treatment records show an abnormal gait, and the consultative examiner specifically notes a normal gait. The claimant testified that he is able to walk without a handheld assistive device. He notes the claimant can never kneel, but the consultative examiner notes the claimant was able to perform a full squat. Given the inconsistencies in Dr. Pardo's opinions and other evidence, along with nothing more than conservative treatment for chronic pain, I find Dr. Pardo's opinions are not fully persuasive, and that he offered no reasonable explanation as to why the claimant would be unable to perform a limited range

>of light exertional level work, especially with the non-exertional limitations set forth above.

(Tr. 23).

While the ALJ made specific consistency findings, as to supportability, the ALJ simply concluded that Dr. Pardo's opinions were not well supported by the objective medical evidence. (Tr. 23). Without further explanation or discussion, this conclusory statement is not enough to satisfy 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). The MRI of the lumbar spine showed, among other things, severe left-sided intervertebral neural foraminal stenosis, and impingement in the left L5 nerve root. (Tr. 465). The MRI of the right hip showed, among other things, osteoarthritic changes with osteophyte formation right femoral head, subchondral cysts in the acetabulum, and loss of articular cartilage in the acetabulum. (Tr. 465). In support of his opinion, Dr. Pardo cited the MRI scans. (Tr. 454-456). Again, without any explanation, the ALJ summarily found Dr. Pardo's opinion unsupported by the objective medical evidence. Thus, substantial evidence does not support the ALJ's persuasiveness findings as to Dr. Pardo's opinions and the resulting RFC assessment, which was based in part on this finding.

### B.     Donald Auerbach, D.O.'s Opinion

Plaintiff argues that the ALJ erroneous and improperly assessed Dr. Auerbach's opinion, when assessing the RFC. (Doc. 13, p. 9). On March 4, 2022, Dr. Auerbach conducted a consultative internal medicine examination of Plaintiff.

(Tr. 405-412). ). Plaintiff reported a history of right hip pain and degenerative changes from 2005. On examination, Dr. Auerbach found Plaintiff in no acute distress, with a normal gait, and also found Plaintiff: able to walk on heels and toes; able to squat; had a normal stance; needed no assistive devices; needed no help changing for exam; needed no help getting on and off the exam table; and needed no help rising from a chair. (Tr. 406). Plaintiff had normal range of motion, full upper and lower extremities strength of 5/5, full grip strength of 5/5 bilaterally, and normal left hip x-rays. (Tr. 407). His diagnosis included right hip pain. (Tr. 407). At the conclusion of his report, he stated: "Further examination is needed. Lack of medical documentation provided." (Tr. 407). His prognosis was fair. (Tr. 408). He found no limitations for sitting, climbing, stairs, bending kneeling, lifting, carrying, pushing, pulling, or fine motor activity. (Tr 408). He also found mild limitations for prolonged sitting and standing. (Tr. 408).

The ALJ found Dr. Auerbach's opinion persuasive with respect to Plaintiff's RFC as it was consistent with the essentially normal findings documents in Dr. Auerbach's report as well as the normal left hip x-ray. (Tr. 23). But in an abundance of caution, the ALJ "assessed additional limitations in the assessed RFC to account for possible restrictions as a result of hip osteoarthritis and lumbar spine stenosis and degenerative disc disease." (Tr. 23). The ALJ then stated, "[r]ecords note worsening of symptoms, which are outlined in detail above and include chronic pain, such that

the claimant would possibly be restricted to a limited range of light work with the non-exertional limitations delineated above." (Tr. 23).

While the ALJ summarized the objective medical testing, including abnormal findings in MRIs of the spine and right hip (as detailed above), the ALJ did not discuss how Dr. Auerbach's opinion was consistent with or supported by this objective medical evidence, such as the MRI scans, especially in light of Dr. Auerbach not having the benefit of reviewing these objective medical test results when he formulated his opinion. (Tr. 407). Additionally, Dr. Auerbach specifically commented that further examination was needed and he lacked medical documentation. (Tr. 407). Because this action is being remanded on other grounds, the Court will require the Commissioner to reconsider Dr. Auerbach's opinion as well.

### III. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical opinions of record along with all of the medical and other evidence of record, and reconsider Plaintiff's RFC. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on December 22, 2023.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties